May it please the Court, Counsel, I'm Maureen Williams representing Andrew Adler in this matter. The standard of review is whether the trial judge's factual findings were against the manifest weight of the evidence. The trial court determined that focusing on the withdrawal of the guilty plea request, the trial court stated further, a review of the report of the proceeding demonstrates that the defendant was neither coerced nor did he enter his guilty plea without a full understanding of his rights. It's twofold, the full understanding of his rights, any fifth grader could tell my client what his rights were. So if we focus on, and we can see that he did understand what his rights were. As far as whether the defendant was coerced into entering a guilty plea, because it's our position that the defendant was not coerced into entering a guilty plea, the defendant was not coerced into entering a guilty plea. We believe that Andrew was coerced. We believe that the weight of the evidence, that the factual findings were against the manifest weight of the evidence. And the reason the defendant was coerced into entering a guilty plea is because the public defender, everything was cut and dry. It was just, she said, you either plead guilty and you get no jail time, or you plead guilty and you get no jail time. And the defendant was not coerced into entering a guilty plea. Or you go to trial, lose, and then you're going to get jail time. There was no in between. There was no, well, this could happen or this could happen. First of all, the fact that she was informing my client that if he entered, if he took the offer, he would not get jail time. He was telling her, well, you know, I'm on probation in Tazewell County, I'm concerned about that. She didn't want to hear about it. She led him to believe by her silence that no jail time meant no jail time. Then when she says, if you do go to trial, you're going to lose, and then you're going to get jail time. It's, I don't know what part of, I don't know how that can be seen as anything other than coercive. My client was saying, you know, there's a video. There's a video that will show things. You can get the interview. You can interview others. I wasn't there. Or he was telling her, I did not do this. And she was, the reason she was coercing him is because she didn't even consider what would happen if she went to trial. If she actually looked at the evidence. She didn't have the police reports. She didn't have his explanation of the facts. She spent between five and ten minutes with my client. Because of that... No, it was a misdemeanor. But because it was a battery and the offer of court supervision was never even mentioned by the public defender, by the state's attorney, it's more serious, in my opinion, because a battery cannot be taken off the record. The only thing he can do is ask the governor for a pardon. And I understand that the public defenders are extremely busy and they don't have a lot of time for each client, but my contention is she should have just been honest. She should have said, you know, you can, if you accept this offer, or let me go back and see if I can get you court supervision. Or if you take this offer, there might be no jail time here, but it might kick off something over in Tazewell County. Just honesty. It's the person that he can only, only she is the person who can protect him, be his advocate. And instead of doing that, she's just telling him falsehoods. Then when she turns around, she says, well, or you can go to trial, you'll lose, and then you're going to get jail time. First of all, a lot of people go to trial, when they should lose, they win, and vice versa. You just don't know what's going to happen. They could have easily gone to court, trial and won. Then the other thing is, they could have easily have done what? Won. With a jury trial. Should a lawyer say, or you can go to trial, you might win, you might lose, I don't know. And then if you lose, you could get a sentence from here to here. I agree, Justin. I do believe that's much help. Because it's putting the decision onto the person where it should be. It should be the defendant's decision. He should be informed. He shouldn't just be looked at as a number and say, I've got five minutes for this kid. I'm going to just tell him whatever I have to tell him to make him go away. Let him think he's going to get no jail time. That will get him to plead guilty. I always tell my clients the beauty of a misdemeanor is you can go to trial, lose, still get court supervision. You have no reason not to go to trial. I was on probation in Tazewell County. He was. And it did prompt a revocation and his probation over there was revoked. She just blatantly ignored that. Which would have been the same even if he had gone to trial and lost and got court supervision on the Peoria County charge. They'd still revoke him in Tazewell, wouldn't they? What the sentence is in Peoria County is irrelevant. It's most likely. But I also believe that if you have a good result in one county, it's going to be seen as favorable in another county. I'm not so concerned about the probation in Tazewell County. What I think shows that my client was coerced is just the fact that this public defender just blatantly, she wasn't even guessing. She was just saying, you will lose and you will get jail time. Neither one of them had to have happened if he went to trial. Guzman was a, whereas the trial court wrote in his opinion, a review of the proceedings demonstrates the defendant was neither coerced nor did he enter his guilty plea without a full understanding of his rights. Guzman goes a little bit further and it's citing Walmart. But Guzman says, for this decision, whether to enter a guilty plea, for it to be knowing and voluntary, a criminal defense attorney is required to fully inform the defendant of the facts and law related to the state's offer and must candidly advise the defendant concerning all aspects of the case, including direct consequences of accepting or rejecting the offer. She was not able to fully inform the defendant of the facts and law because she didn't know the facts. I've had cases that have taken a year, year and a half, and we still don't know whether to go to trial because it's a weighing game related to the state's offer and must candidly advise. The whole crux of this case is she did not candidly advise the defendant concerning all aspects of his case. She didn't bring up court supervision, she didn't mention it's possible he could win, we could dig up this video, we could see if we can develop our case a little bit better, or first of all from step one maybe would be helpful. She didn't say you could still get court supervision even if you lose. It's just wrong to say you are going to get jail if you go to trial. It's absolutely taking away the option of going to trial. So for those reasons we are arguing that the factual findings were in fact against the manifest weight of the evidence and for that reason the trial court erred in denying post-conviction relief. I have some questions based on some curious dates in the record. On April 8, 2011 the hearing was held in front of Judge Lucas. It's a misdemeanor case. Is there normally a court reporter present in misdemeanor cases? I believe I requested one. And then the judge's order wasn't filed for two years. I believe Judge Lucas was sitting on it. He forgot about it in a move. It got misplaced. He was getting ready for retirement. The state's attorney reminded him of this. He went ahead and filed the order I believe on the last day when he was on the bench. Then it again sat until April and I thought something's not right. He signed the order and it sat in the file and then in April the next year I said whatever happened to that case, Judge Brandt took it up and he said there was an order in the file. It was just never filed. So that's the reason for the delay. So by any account the judge didn't prepare the order for more than a year after the hearing? That's correct. The transcript of the hearing should be in your file, I believe. But you say you requested a transcript of the hearing. Did the judge have a transcript available to him when he rendered the decision? I made sure he did. You gave the transcript to the trial court judge and said we're waiting for this? No, I didn't say we're waiting for this. You said hint, hint. I did it way at the beginning. I wanted to make sure he had it and I believe my opponent as well. If there are no further questions, I'll conclude my remarks. Thank you. Initially the people note that defendant raises on appeal the same two issues that were raised in the post-conviction petition below, that petition went to a third stage evidentiary hearing and the trial judge denied the petition. The defendant does not appeal the denial of that petition. We're going to review the claims, the same claims that were made in the petition are made on appeal and I'll go through those claims at this time. The defendant first asserts in his brief that he was denied effective assistance of guilty plea counsel. The defendant asserted that plea counsel's performance was deficient, the first problem. At the plea hearing, the prosecutor detailed the negotiated plea agreement. The trial judge asked the defendant if this was a free, full and voluntary agreement and the defendant replied yes, it was. The defendant affirmed that he understood the terms of the plea, he affirmed that he had not been forced or threatened into entering the plea and he affirmed that he was not under the influence of any drugs or alcohol. The trial judge asked if he was satisfied with Ms. Camp, his plea attorney, and the defendant replied that he was. The defendant affirmed that he signed the plea because he was guilty as charged. As the record shows, at the time of the plea, the defendant had no issues with the plea agreement or with Ms. Camp's representation. The defendant went through a number of points in support of this claim of deficiency and I'll briefly address a number of those. He asserted that plea counsel did not learn his version of the facts and that she did not take the time to determine if his case should have gone to trial. At the evidentiary hearing, the defendant testified that he had spoken with Ms. Camp. Ms. Camp asked him exactly what happened and he told her exactly what happened. He affirmed that Ms. Camp reviewed with him the plea offer that she had received and on cross-examination, the defendant affirmed that he had never told Ms. Camp that he wanted more time to consider the plea agreement. He affirmed that he had never asked Ms. Camp to obtain a videotape from the crime scene, which he later claimed existed. Ms. Camp testified that a typical encounter in the misdemeanor court lasts about five minutes and she recalled speaking with the defendant in this case about 15 to 20 minutes. She indicated that the defendant did not tell her about a potential surveillance video and the defendant did not claim that he was innocent to her. She stated that if a defendant claims to her that he is innocent, then she sets the case for trial. On cross-examination, Ms. Camp said that she and the defendant had gone over all of the file, including the police report, which was more than was typically done when considering a misdemeanor case. The record shows that counsel did take the time to determine whether this case should have gone to trial. In a brief, the defendant asserts that Ms. Camp gave misleading advice by omission and that Ms. Camp failed to address the defendant's prior Tazewell County probation. In Manning, our Supreme Court held that a defendant's awareness of a collateral consequence of a guilty plea is not a prerequisite to the entry of a knowing involuntary plea. Thus, even if Ms. Camp had failed to discuss the collateral consequence that a defendant could be jailed for violating his parole in Tazewell County, that would not have been an effective assistance on her part. Then it also asserts that Ms. Camp gave incorrect advice about the strength of the case. The Fourth District, in the case of Bien, has held that a defense attorney's honest assessment of a defendant's case cannot be the basis for holding that a defendant's guilty plea was involuntary. And our Supreme Court in Covington held that the circumstances that an accused followed his counsel's advice, whether such advice was proper or ill-advised, would not render the guilty plea involuntary. Thus, the defendant cannot demonstrate that his counsel's actions have been deficient or she provided him an honest assessment of the case. In regards to the second prong, the assertion that plea counsel performs prejudice to him, the reasons the defendant provides in his brief to support that he was prejudiced are merely speculation. Things like he wouldn't be able to get a job or that she denied him an opportunity to hire a different counsel, that sort of thing. The defendant cannot show that he was prejudiced by plea counsel's performance because his probation in Tazewell County could have been revoked regardless of whether or not the defendant played guilty in this case. Because the defendant cannot show, even if the strickland prong, he cannot show that defense counsel in this case was ineffective. The people stand on our brief for all other argument and ask this court to affirm the denial of defendant's post-conviction petition. Thank you, Mr. Oswald. Ms. Williamson-Rabot? May I ask a third question, General? All right. This matter will be taken under advisement. A written disposition will be issued. Right now, we'll be in a brief recess for a panel change before the next case. Thank you.